# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| KRYSTAL L. CULLER )<br>94 Cedars Drive )<br>Poland, Ohio 44514 )<br>  )<br>   *Plaintiff*, )<br>  )<br>-vs- )<br>  )<br>ATRIA MANAGEMENT )<br>COMPANY, LLC )<br>c/o Corporation Service Company, )<br>Statutory Agent )<br>50 West Broad Street, Suite 1330 )<br>Columbus, Ohio 43215 )<br>  )<br>and )<br>  )<br>ATRIA SENIOR LIVING, INC. )<br>c/o Corporation Service Company, )<br>Statutory Agent )<br>421 West Main Street )<br>Frankfort, Kentucky 40601 )<br>  )<br>   *Defendants*. )<br>_____ ) | Case No.: _____<br><br>Judge _____<br><br>**COMPLAINT**<br><br>**(Jury Demand Endorsed Hereon)** |

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked under federal question jurisdiction provided under 28 U.S.C. §1331, in that Plaintiff's Complaint asserts violations of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101, *et seq.*, ("ADA"). This Court also has supplemental jurisdiction over Plaintiff's state law statutory claims under 28 U.S.C. §1367.

2. Venue is proper in this Court under 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claims alleged occurred in the Northern District of Ohio.

3. Plaintiff has complied with the conditions precedent for bringing an action under the ADA by filing a timely charge of discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC") with respect to her discrimination and retaliation claims.

4. Plaintiff received her Right to Sue notice from the EEOC and has filed this Complaint less than 90 days after receipt.

## PARTIES

5. At all times relevant, Plaintiff Krystal L. Culler, DBH ("Dr. Culler") resides at 94 Cedars Drive, Poland, Ohio (Mahoning County) and is a "person" within the meaning of the ADA, Chapter 4112 of the Ohio Revised Code, and the Kentucky Civil Rights Act, KRS 344 *et seq*.

6. At all times relevant, Defendant Atria Management Company, LLC, is a limited liability company, formed in Delaware, and registered to do business in the State of Ohio.

7. At all times relevant, Defendant Atria Senior Living, Inc. is a corporation, formed in Delaware, and registered to do business in the State of Kentucky.

8. At all times relevant, Defendants Atria Management Company, LLC and Atria Senior Living, Inc. (collectively referred to herein as "Atria") are each an "employer" and/or "person" within the meaning of the ADA, Chapter 4112 of the Ohio Revised Code, and the Kentucky Civil Rights Act, KRS 344 *et seq*.

9. At all times relevant, Atria is in the business of operating senior living facilities.

**FACTUAL ALLEGATIONS**

10. On or about October 14, 2019, Dr. Culler applied for the position of Health, Fitness, and Intellectual Program Manager with Atria via its website. On that same day, a recruiter for Atria called Dr. Culler in Ohio and conducted an initial phone interview.

11. On or about October 18, 2019, the Vice President of Resident Engagement for Atria, who was to be Dr. Culler's potential supervisor, called Dr. Culler in Ohio and conducted an hour interview.

12. On or about October 22, 2019, the Vice President emailed Dr. Culler to advise that another Atria recruiter would be in touch with her regarding next steps in the hiring process.

13. On or about October 23, 2019, Atria's recruiter called Dr. Culler in Ohio to introduce herself and discuss with Dr. Culler the position with Atria.

14. On or about November 6, 2019, Atria's recruiter called Dr. Culler in Ohio to invite her to participate in an in-person interview with Atria, which occurred on or about November 18, 2019.

15. The next day, on or about November 19, 2019, Atria's recruiter called Dr. Culler in Ohio and offered Dr. Culler the position of Health, Fitness, and Intellectual Program Manager.

16. On or about November 20, 2019, Dr. Culler disclosed to Atria's recruiter that she would need to seek accommodation for her disability, chronic migraine

headaches, regarding her work environment. At the time, Dr. Culler requested a private office as a reasonable accommodation. The recruiter advised Dr. Culler that she would alert Atria's Human Resources Director regarding her request for accommodation.

17. On or about November 22, 2019, Dr. Culler received a written offer letter on Defendant Atria Senior Living letterhead and signed by the Executive Vice President and Chief Operating Officer for Defendant Atria Senior Living. The letter stated, in pertinent part, that "Atria Senior Living, Inc., through one of its subsidiaries ('Atria' or the 'Company'), is pleased to offer you a position as Health, Fitness & Program Mgr at Atria Atria *{sic}* Senior Living reporting to the VP, Resident Engagement . . . ." Further, Dr. Culler's anticipated start date was January 13, 2020.

18. Although Dr. Culler had already received both a verbal and written offer, on or about November 25, 2019, Atria's HR Director emailed Dr. Culler providing, in part: "I understand you are interested in a career with us, but have shared that you would require some accommodations. To help provide clarity for your request, I am sending you a few forms for you to return back to me for further review. . . . When do you think you will be able to return these forms to me?" Attached to the email were a job description for the Health, Fitness, and Intellectual Program Manager position, a form for Dr. Culler to complete (titled "Request for Reasonable Workplace Accommodation"), and a form for Dr. Culler's healthcare provider to complete (titled "Request for Medical Information" and which also provided that Dr. Culler would be an employee of Atria Management Company). That same day, Dr. Culler responded that she would need to follow up with her about when the healthcare provider form could be returned.

4

19. On or about November 26, 2019, Atria's recruiter called Dr. Culler in Ohio and instructed her to sign her offer letter and to "table" the accommodation paperwork until the following week, given the upcoming Thanksgiving holiday. That same day, Dr. Culler signed her offer letter via Atria's online portal.

20. On or about December 2, 2019, Dr. Culler emailed the HR Director to advise that she was completing the employee form regarding her accommodation request, was in the process of switching medical providers, and would be scheduling a meeting with her supervisor regarding her request for accommodation. Dr. Culler then emailed her future supervisor requesting a meeting to discuss her accommodation request. Somehow, the HR Director was made aware of the email and told Dr. Culler to only speak with her about the accommodation request.

21. On or about December 4, 2019, Atria's HR Director called Dr. Culler to discuss her "alleged disability". During the call, Dr. Culler told the HR Director that she had an appointment with a doctor at the Cleveland Clinic that day and anticipated it could take approximately 3-4 weeks for the paperwork to be completed and returned. The HR Director advised Dr. Culler that her hiring process would be "on hold" until Atria received the completed healthcare provider form. Despite Atria having already offered the position to Dr. Culler and Dr. Culler accepting the position, the HR Director stated that Atria needed to further evaluate if the position was a "good fit" for her and if she was a "good fit" for Atria owing to her "alleged disability".

22. On or about December 4th, Dr. Culler returned her completed "Request for Reasonable Workplace Accommodation" form to the HR Director, in which she requested the following reasonable accommodations: a private office area to reduce her

5

exposure to certain triggers of her migraine headaches, adding filters to the fluorescent lighting or utilizing an alternate light source, an anti-glare filter for her computer, and flexible scheduling and/or telework during acute attacks (with her supervisor's permission). Atria, however, did not respond to her request for reasonable accommodation.

23. On or about December 5, 2019, Dr. Culler confirmed with the HR Director that the request for accommodation paperwork was currently with her physician but that it could take up to fourteen (14) business days to process, *i.e.*, until December 24, 2019.

24. On or about December 9, 2019, despite Dr. Culler's prior communications regarding the timetable for completing the accommodation paperwork, Atria's HR Director claimed for the first time that the paperwork was due that day and threatened Dr. Culler that Atria would withdraw its employment offer if the accommodation paperwork was not returned.

25. On or about December 12, 2019, Dr. Culler contacted her future supervisor regarding the HR Director's threat. Despite Dr. Culler's prior email requesting a meeting to discuss her accommodation request, her future supervisor claimed to not have been aware of her request for accommodation.

26. On or about December 16, 2019, Dr. Culler contacted the HR Director to advise that, due to a mix-up at her healthcare provider's office, she had scheduled another appointment with her doctor to occur the following day to expedite the completion of the accommodation paperwork.

27. On or about December 17, 2019, Dr. Culler saw her doctor and updated Atria's HR Director.

28. On or about December 19, 2019, Dr. Culler contacted the HR Director asking for a fax number to provide to her healthcare provider's office and advising that her healthcare provider would provide an update regarding the accommodation paperwork the next day.

29. On or about December 20, 2019, Atria rescinded its offer of employment to Dr. Culler. When Dr. Culler asked the HR Director why the offer had been rescinded, the only reason given was that Dr. Culler had failed to produce medical documentation. Later that same day, Dr. Culler's healthcare provider from the Cleveland Clinic emailed Atria's HR Director stating that the office was trying to expedite the accommodation paperwork and would fax it before the holiday.

30. On or about December 23, 2019, Atria received the completed healthcare provider form regarding Dr. Culler, one day earlier than the timeframe provided by Dr. Culler. Yet, Atria did not re-offer the position to Dr. Culler.

31. Thereafter, Atria continued to advertise as available the position of Health, Fitness, and Intellectual Program Manager, and such position remained open until Atria hired a person outside of Dr. Culler's protected class to fill the position.

### COUNTS I – III
### Violations of 42 U.S.C. §12112, O.R.C. §4112.02(A), and KRS 344.040 – Failure to Hire

32. Dr. Culler reaffirms and realleges Paragraphs 1 through 31 of her Complaint as if fully rewritten herein.

33. Dr. Culler suffers from chronic migraine headaches, which is a permanent medical condition and, during a migraine attack, substantially limits Dr. Culler in major life activities, including, but not limited to, seeing, thinking, concentrating, and reading.

34. Dr. Culler is thus disabled, has a record of suffering from a substantially limiting impairment, and/or was regarded as being disabled by Defendants.

35. Defendants were aware of her disability and/or regarded Dr. Culler as being disabled.

36. Dr. Culler was qualified for the position of Health, Fitness, and Intellectual Program Manager and could perform the essential functions of her position with or without a reasonable accommodation.

37. Defendants, however, refused to hire Dr. Culler, at least in part, because of her disability and/or because Defendants perceived Dr. Culler as being disabled.

38. The conduct of Defendants was done maliciously and/or intentionally and with reckless disregard for the rights of Dr. Culler.

39. As a direct and proximate result of Defendants' conduct, Dr. Culler has suffered damages in an amount to be determined at trial and other reasonably anticipated results, including anxiety and emotional effects.

## COUNTS IV-VI
## Violations of 42 U.S.C. §12112, O.R.C. §4112.02(A), and
## KRS 344.040 – Failure to Provide Reasonable Accommodation

40. Dr. Culler reaffirms and realleges Paragraphs 1 through 39 of her Complaint as if fully rewritten herein.

41. Dr. Culler suffers from a physical impairment that substantially limits one or more major life activities and/or has a record of suffering from a substantially limiting impairment, of which Defendants were aware.

42. Dr. Culler was qualified for her position and could perform the essential functions of her position with or without a reasonable accommodation.

43. Defendants, however, failed to engage in the interactive process with Dr. Culler to define and provide one or more reasonable accommodations for her and/or failed to grant her any reasonable accommodation, but instead rescinded Dr. Culler's job offer.

44. The conduct of Defendants was done maliciously and/or intentionally and with reckless disregard for the rights of Dr. Culler.

45. As a direct and proximate result of Defendants' conduct, Dr. Culler has suffered damages in an amount to be determined at trial and other reasonably anticipated results, including anxiety and emotional effects.

## COUNTS VII-IX
## Violations 42 U.S.C. §12203, O.R.C. §4112.02(I), and
## KRS 344.280 – Retaliation

46. Dr. Culler reaffirms and realleges Paragraphs 1 through 45 of her Complaint as if fully rewritten herein.

47. Defendants retaliated against Dr. Culler after she engaged in protected activity when she requested one or more reasonable accommodations for her disability.

48. Defendants knew that Dr. Culler was exercising protected rights and thereafter took one or more adverse employment actions against her by denying her reasonable accommodations, failing to hire her, and/or engaging in other such conduct which would dissuade a reasonable person from engaging in protected activity.

49. The conduct of Defendants was done maliciously and/or intentionally and with reckless disregard for the rights of Dr. Culler.

50. As a direct and proximate result of Defendants' conduct, Dr. Culler has suffered damages in an amount to be determined at trial and other reasonably anticipated results, including anxiety and emotional effects.

**WHEREFORE**, Plaintiff Krystal L. Culler respectfully requests that this Court award damages to her and against Defendants, including all statutory damages; compensatory damages, back pay, and front pay; attorney fees, expenses, and costs of court; pre- and post-judgment interest; and all other relief, whether in law or in equity, which will fully and fairly compensate Dr. Culler for her injuries and damages.

Respectfully submitted,

_/s/ Kami D. Brauer_
KAMI D. BRAUER (#0071030)
The Law Firm of Kami D. Brauer, LLC
700 West Saint Clair Avenue, Suite 316
Cleveland, Ohio 44113
(216) 236-8537 (telephone)
(216) 621-7810 (facsimile)
kamibrauer@kdbrauerlaw.com

*Counsel for Plaintiff*

## JURY DEMAND

A trial by jury is hereby demanded against Defendants on all issues that may be so tried.

                                                 _/s/ Kami D. Brauer_
                                                 KAMI D. BRAUER (#0071030)

                                                 *Counsel for Plaintiff*